UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-CV-25302 SCOLA/GOODMAN

KEVIN COLLAZO,

     Plaintiff,

v.

PROGESSIVE SELECT INS.
CO.,

     Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANT'S MOTION TO STRIKE
AND/OR LIMIT PLAINTIFF'S EXPERT WITNESSES**

This case arises from an insurance dispute surrounding a June 27, 2019 motor

vehicle collision. Plaintiff Kevin Collazo was involved in a motor vehicle collision with

another driver and brought this lawsuit against Defendant Progressive Select Insurance

Company, his insurance company, based on alleged nonpayment of a claim for

uninsured motorist benefits to reimburse Plaintiff for injuries he allegedly suffered

because of the collision.

Defendant filed a motion to strike and/or limit the testimony of Plaintiff's six

expert witnesses. [ECF No. 60]. Plaintiff filed a response [ECF No. 61] and Defendant filed

a reply [ECF No. 63]. District Judge Robert N. Scola referred the motion to the

Undersigned.[1] [ECF No. 65].

### I.    Background

Plaintiff listed six expert witnesses in his Expert Disclosures who can be separated into two categories: (1) one Rule 26(a)(2)(B) life care planning expert, Dr. Santos BiFulco; and (2) five Rule 26(a)(2)(C) treating physician experts, Dr. Todd Narson, Dr. Peter Warheit, Dr. Samuel Popinchalk, Dr. Daryl Eber, and Dr. Michael Smith.

As part of Plaintiff's Rule 26(a)(2)(B) disclosure, he provided Dr. BiFulco's report, curriculum vitae, list of prior testimony, and indicated that Dr. BiFulco's fees would be disclosed upon receipt. [ECF No. 60-1]. In Plaintiff's disclosure for the other five witnesses, he listed beneath each of their names a summary of the subject matter of their testimony. *Id.*

Although Defendant seeks to strike all of Plaintiff's experts for myriad reasons, Defendant raises a *Daubert* challenge to only Dr. BiFulco's opinions regarding the causation, permanency, and debilitation of Plaintiff's alleged injuries. Defendant's overarching justification for striking Plaintiff's treating physician experts is the allegedly deficient Federal Rule of Civil Procedure 26 disclosures.

As detailed below, the Undersigned recommends **granting in part** and **denying**

---

[1]    Judge Scola also referred Plaintiff's Motion in *Limine* [ECF No. 59] to the Undersigned, which has been addressed in a separately filed Order [ECF No. 66].

**in part** Defendant's motion.

## II.   Legal Standards

### a. *Daubert*

The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993). Federal Rule of Evidence 702 governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 582 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry: (1) whether the expert is qualified to testify competently; (2) whether the methodology used to reach the conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact to understand the evidence or to determine a fact at issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

As an overarching principle, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey*, 298 F.3d at 1256. "In order to be admissible, an expert's testimony must be based on 'more than subjective belief or unsupported speculation.'" *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996) (quoting *Daubert*, 509 U.S. at 590). There should be "[s]cientific method; good grounds and appropriate validation." *U.S. v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005).

Reliability of the methodology requires "an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink*, 400 F.3d

at 1292; *see also Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

These reliability factors, however, are non-exhaustive. *Kumho Tire*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7. The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *U.S. v. Frazier*, 387 F.3d 1244, 1244 (11th Cir. 2004). The party proffering the expert also has the burden of "laying the proper foundation for the admission of the expert testimony . . . and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341. Thus, the district court cannot exclude an expert because it believes the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596).

A less-than-perfect expert opinion may still be admitted, even if it contains gaps. *See In re Trasylol Prods. Liab. Litig.*, No. 08–MD–01928, 2010 WL 1489793, at *6 (S.D. Fla.

Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.").

Furthermore, courts "must be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be accorded to such testimony by the fact finder." *Id.* at *7 (quoting *Quiet Tech*, 326 F.3d at 1341).

On the other hand, courts do not hesitate to exclude purported expert testimony which does not pass muster. *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir. 1999) (affirming summary judgment in favor of silicone breast implant manufacturers and upholding district court's exclusion of proffered expert's causation testimony under *Daubert*); *Rink*, 400 F.3d at 1286 (affirming exclusion of expert testimony in products liability and toxic trespass claims against pesticide manufacturer and therefore affirming summary judgment for defendant); *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (finding trial court in criminal case did not abuse its discretion in excluding proffered expert testimony from forensic investigator); *Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183 (11th Cir. 2010) (affirming defense summary judgment for infant car seat manufacturer in products liability lawsuit involving child who sustained traumatic brain injuries and upholding trial court ruling which excluded expert testimony because the experts were not sufficiently reliable).

 b. <u>Federal Rule of Civil Procedure 26</u>

"Federal Rule of Civil Procedure 26 requires a party to disclose 'the identity of any [expert] witness it may use at trial' and other information that varies depending on the expert." *Izquierdo v. Certain Underwriters at Lloyd's London*, No. 20-13772, 2021 WL 3197008, at *3 (11th Cir. July 29, 2021) (quoting Fed. R. Civ. P. 26(a)(2)(A)). "If a party fails to properly disclose an expert witness under Rule 26(a), the party may not use the witness 'unless the failure was substantially justified or is harmless.'" *Id.* (quoting Fed. R. Civ. P. 37(c)(1)).

In evaluating whether a failure is substantially justified or harmless, the court should consider "the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party if the witness [is] allowed to testify." *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008) (cleaned up). District courts are given "broad discretion" in managing pretrial discovery matters and may exclude a witness or impose less severe sanctions when warranted. *Long v. E. Coast Waffles, Inc.*, 762 F. App'x 869, 871 (11th Cir. 2019).

## III. Analysis

### a. Rule 26(a)(2)(B) Expert

Defendant seeks to exclude or limit the testimony of Plaintiff's singular Rule 26(a)(2)(B) expert, Dr. BiFulco, on alternative grounds: (1) strike his testimony in its entirety because Plaintiff failed to adequately disclose Dr BiFulco's compensation; or (2)

strike Dr. BiFulco's opinions on causation, permanency, and debilitation because they do not satisfy *Daubert*.

### i.    Failure to Disclose Compensation

Defendant argues that the Court should exclude Dr. BiFulco because Plaintiff "fail[ed] to disclose the compensation paid by Plaintiff to Dr. BiFulco as required by Fed. R. Civ. P. 26(a)(2)(B)(vi)." [ECF No. 60]. In making this argument, Defendant notes that in the initial Rule 26 disclosure, Plaintiff states, "Dr. BiFulco has not submitted his charges at this time. The charges will be produced upon receipt." [ECF No. 60-1]. Plaintiff responds and says that this failure to disclose was inadvertent and he has remedied the situation by providing Defendant with the invoice. [ECF No. 61]. Despite receiving the invoice, Defendant claims that (1) Plaintiff failed to establish that this initial non-disclosure was inadvertent or harmless; and (2) the belatedly-provided invoice contained a due date well *before* the expert disclosure deadline. [ECF No. 63].

The three factors the Court should consider weigh in favor of finding the failure to disclose is harmless.[2] Plaintiff explained that "[w]hen Defendant indicated it had not

---

[2]    The information provided by the parties contained insufficient information for the Undersigned to determine whether the failure to disclose was inadvertent. Plaintiff's Rule 26 disclosure was submitted on September 7, 2021 and states, "Dr. BiFulco has not submitted his charges at this time. The charges will be produced upon receipt." [ECF No. 60-1]. In Defendant's reply, it attaches the untimely invoice, which includes a June 25,

received the invoice, it was provided." Additionally, Dr. BiFulco is an important witness for Plaintiff; he is primed to testify on a variety of necessary subjects, including the alleged costs of Plaintiff's potential future medical care. Lastly, Defendant has not articulated any prejudice based on the delayed disclosure of Dr. BiFulco's compensation.

Because the factors weigh in favor of finding this violation was harmless, the Undersigned **respectfully recommends** the District Court **deny** Defendant's request to strike Dr. BiFulco based on Plaintiff's delayed disclosure of Dr. BiFulco's compensation. Additionally, because there seems to be concern from Defendant about the fact it received only a single invoice, the Undersigned **respectfully recommends** the District Court to **Order** Plaintiff to provide to Defendant copies of *all* invoices submitted by Dr. BiFulco, including those for services incurred after the initial invoice was produced.

ii.    *Daubert*

Defendant seeks to strike Dr. BiFulco's testimony regarding causation, permanency, and debilitation because "Dr. BiFulco provides no principles and methods to explain how he is able to [reach his conclusions]." [ECF No. 60]. As a second argument, Defendant claims that Dr. BiFulco cannot offer these opinions because he never physically examined Plaintiff before reaching his conclusions. *Id.* Plaintiff responds that

---

2021, issuance date and July 25, 2021, due date, also indicating that the total amount had already been paid. [ECF No. 63-1]. Thus, it appears the invoice should have been available as early as June 25, 2021, which is well before the Rule 26 disclosure was submitted by Plaintiff.

9

a life care planning expert does not *need* to physically examine a patient to offer an opinion and states that "Dr. BiFulco employed the methodology that a reasonable board-certified life care planner who is also a physical medicine and rehabilitation physician would utilize." [ECF No. 61]. Defendant's reply counters that Dr. BiFulco's report is "void" of any actual methodology. [ECF No. 63].

In Defendant's initial motion, it included a copy of Dr. BiFulco's report. [ECF No. 60-2]. Plaintiff has not provided the Court any additional information about Dr. BiFulco's methodology or procedures, leaving the report as the only thing to review in support of Dr. BiFulco's opinions.

The Undersigned is convinced that Dr. BiFulco does not need to physically examine Plaintiff in order to be able to offer his opinions. *See Incardone v. Royal Caribbean Cruises, Ltd.*, No. 16-20924-CV, 2018 WL 6520934, at *7 (S.D. Fla. Dec. 11, 2018) (admitting testimony of life care planner and rejecting argument that "the life care planner must meet face-to-face with the subject of the report or his or her family."); *Frometa v. Diaz-Diaz*, No. 07 Civ. 6372(HB), 2008 WL 4192501, at *2-3 (S.D.N.Y. Sept. 11, 2008) (holding that a life care planner's experience and review of medical records was sufficient to qualify under *Daubert*); *Deramus v. Sala Motor Freight Line*, LLC, 2009 WL 1664084, at *2 (M.D. Ala. June 15, 2009) (finding expert testimony of life care planner admissible where expert had reviewed the plaintiff's medical records and depositions of the plaintiff's treating physicians). Defendant has presented no authority to the contrary.

Therefore, the Undersigned rejects Defendant's request to limit Dr. BiFulco's testimony on the grounds that he did not physically examine Plaintiff before reaching his conclusions.

**However**, the Undersigned does find issue with Dr. BiFulco's methodology to reach his opinion on **causation** of Plaintiff's injuries. This is because it is currently *unknown* what methodology was used. Indeed, Plaintiff's description of Dr. BiFulco's methodology in his response brief isn't a summary or a synopsis of the methodology contained in Dr. BiFulco's report, it is a near-verbatim quote of the only direct discussion of Dr. BiFulco's methodology in his eleven-page report. *Compare* [ECF No. 61] ("Dr. BiFulco employed the methodology that a reasonable board-certified life care planner who is also a physical medicine and rehabilitation physician would utilize.") *with* [ECF No. 60-2] ("The methodology I applied is the reliable and relied upon methodology that a reasonable board-certified life care planner (CLCP) who is also a Physical Medicine and Rehabilitation physician would utilize[.]").

If, for example, Defendant had chosen to hire a rebuttal expert to contest Dr. BiFulco's findings, it would be impossible (based on this report) for the rebuttal expert to analyze (and perhaps challenge) the methods, facts, literature, or experience upon which Dr. BiFulco relied to reach his conclusions about causation – because none were specified.

Reliability of the methodology requires "an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration

11

several factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Rink*, 400 F.3d at 1292; *see also Quiet Tech. DC–8, Inc.*, 326 F.3d at 1341.

The Undersigned cannot conduct an exacting analysis (or any other type of analysis, for that matter) of Dr. BiFulco's methodology for his causation conclusion because the report offers no insight into what methodology Dr. BiFulco employed (other than that he employed a "reasonable" methodology). Without this information, the Undersigned cannot determine that Dr. BiFulco's opinion that Plaintiff's alleged injuries were caused by the car accident (and not some other event) is based on "good grounds." Moreover, Plaintiff's failure to provide an explanation of the methodology after this omission was highlighted in Defendant's motion is telling.

However, the Undersigned is convinced, based on the totality of the report, that Dr. BiFulco's other opinions (i.e., on the permanency and disabling nature of Plaintiff's injuries) meet *Daubert's* methodology prong. Dr. BiFulco discusses Plaintiff's medical records, Plaintiff's subjective complaints, effectiveness of therapeutic treatment, and the relevant literature in opining about the severity of Plaintiff's injuries, as well as the need for continued care. Although Dr. BiFulco does not explicitly list this as the *methodology*,

12

he provides enough information to the Court and to opposing counsel to *understand* the methodology upon which Dr. BiFulco relied.

Defendant does not argue in his motion that Dr. BiFulco's methodology for *these* non-causation opinions is unsupported or otherwise scientifically questionable. Instead, Defendant's argument is only that the report doesn't expressly identify the methodology as "methodology."

For these reasons, the Undersigned **respectfully recommends** the District Court **grant in part and deny in part** Defendant's motion and prohibit Dr. BiFulco from offering any testimony about the *causation* of Plaintiff's injuries.

b.   Rule 26(a)(2)(C) Experts

Defendant also seeks to strike or limit the testimony of some or all of Plaintiff's five treating physicians based on the following arguments: (1) strike the witnesses because Plaintiff failed to "provide a summary of the facts and opinions" about which his five treating physicians would testify; (2) prohibit the five treating physicians from testifying about causation, future medical care, permanency, and reasonableness of medical charges because Plaintiff did not submit a report in accordance with Rule 26(a)(2)(B); and (3) strike one of Plaintiff's two radiology experts because their testimony would be cumulative. [ECF Nos. 60; 63].

Plaintiff responds that his Rule 26(a)(2)(C) expert disclosures are sufficient and, even if they are not, he should be given an opportunity to cure the deficiency because

Defendant "laid in wait," hoping to capitalize on a deficient disclosure to obtain the witnesses' exclusion. He also argues that because the treating physicians are not "retained experts," he is not required to provide a Rule 26(a)(2)(B) report even if the witnesses are going to testify on issues such as causation. Lastly, he states that his two listed radiology experts will testify about different MRIs taken of Plaintiff's injuries.

The Undersigned will address each of these arguments in turn.

         i.     *Sufficiency of Plaintiff's Rule 26(a)(2)(C) Disclosure*

Rule 26(a)(2)(C) states

Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i)     the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii)    a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii).

As part of its motion, Defendant submitted Plaintiff's expert witness disclosure. [ECF No. 60-1]. The expert witness disclosure provides similar summaries for all five treating physicians directly beneath the witnesses' name. In the most detailed witness summary, the disclosure states:

Dr. Narson is expected to testify regarding [Plaintiff's] injuries, care, and treatment. Dr. Narson is also expected to testify regarding causation, permanency, impairment, and need for future care. Dr. Narson may also testify regarding the reasonableness of his medical charges. Dr. Narson's treatment records and reports have been produced throughout discovery.

14

*Id.*

Although this disclosure satisfies Rule 26(a)(2)(c)(i), it does not satisfy subsection (ii), which requires a summary of the facts and opinions to which the witness is expected to testify. Thus, Plaintiff's disclosure is deficient.

However, in this situation, striking the witness is too serious a remedy. Defendant should not procure such a windfall based on the decision to wait until the last minute to bring the deficiency to the Court's attention. Understandably, it is difficult for Defendant to articulate prejudice when it knows not what the actual facts and opinions of the witnesses will be. If one of the witnesses, for example, opines that Plaintiff's injuries are fabricated and the other doctors inflated their bills, then it may withdraw its objection to that witness. However, if the summary of the facts and opinions offers something new or inconsistent with what Defendant anticipates, then it may be able to establish prejudice.

Therefore, the Undersigned **respectfully recommends** the District Court **deny without prejudice** Defendant's request to strike Plaintiff's five treating physicians and require Plaintiff to submit a compliant notice within five days of the entry of the Order.

## ii. *Requirement to Submit a Rule 26(a)(2)(B) Report*

Defendant argues that Plaintiff's treating physicians' opinions on causation, future medical care, permanency, and reasonableness of medical charges require them to step outside of their treating physician roles, which therefore requires them to author a Rule 26(a)(2)(B) report. Plaintiff, however, counters that the relevant question is not the nature

15

of the opinion but, rather, the nature of the relationship between the plaintiff and the expert. In support of this position, Plaintiff cites *Torres v. Wal-Mart Stores E., L.P.*, No. 19-62352-CIV, 2021 WL 3634632, at *20 (S.D. Fla. Aug. 17, 2021).

In *Torres*, United States District Judge Roy K. Altman held that "the difference between an expert who must provide a full report under Rule 26(a)(2)(B) and an expert who must submit only a summary under Rule 26(a)(2)(C) boils down to whether the expert was 'retained ... to provide expert testimony in the case.'" *Id.* at 10. However, what Plaintiff neglects to reference in his response is the *Torres* Court's acknowledgement that Rule 26(a)(2)(C) "expressly give[s] district courts the discretion to require more-fulsome disclosures—beyond those prescribed in Section (C)—for non-retained experts." *Id.* at 14.

Given the *Torres* Court's concession that a district court can require a more-fulsome disclosure, the Undersigned need not address the merits of the *Torres* analysis.

As Defendant correctly notes in its reply, United States District Judge Robert N. Scola did in fact require more-fulsome disclosures for non-retained experts who want to offer these types of opinions. Judge Scola's Scheduling Order in this case states:

> When a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) report. By contrast, treating physicians offering opinions beyond those arising from treatment are experts from whom full Rule 26(a)(2)(B) reports are required. *See, Muzaffarr v. Ross Dress for Less, Inc.*, No. 12-61996-CIV, 2013 WL 3850848, at *1 (S.D. Fla. July 26, 2013).

[ECF No. 18]. The cited case offers a more-pointed description of the types of opinions

16

for which Judge Scola requires a treating physician to author a Rule 26(a)(2)(B) report, stating "when the testimony of the treating physician or provider ventures beyond such matters and includes opinions on causation, prognosis, and/or future implications of the injury, then he or she must provide a full report satisfying the requirements of Federal Rule of Civil Procedure 26(a)(2)(B)." *Muzaffarr*, 2013 WL 3850848, at *1.

Thus, the Court's Scheduling Order requires Plaintiff to provide full expert reports for treating physicians offering opinions on causation, future medical care, permanency, and the reasonableness of medical charges.

Unlike the prior deficiency, here, the three factors weigh in favor of prohibiting Plaintiff's treating physician experts from offering testimony on these subjects. Although this testimony is certainly important to Plaintiff's case, the "first and third factors, together, can outweigh the second." *Romero*, 552 F.3d at 1322.

Plaintiff has made no effort to explain his failure to supply this report other than that he thought one was not needed under the rules. This issue is compounded by Plaintiff's failure to submit even a sufficient Rule 26(a)(2)(C) notice on these topics. Perhaps Plaintiff failed to fully read the Scheduling Order -- however, even if that were the case, the Undersigned would still not find this explanation sufficient.

Likewise, the prejudice to Defendant is great. These reports could be instrumental in preparing its case, determining whether it is wise to settle, deciding which experts in which fields to hire. Defendant should not have to wait until the day of trial, when the

witness testifies, to fully understand the basis and content of that witness' opinion.

Although Defendant could have brought the deficiency to the Court sooner, it is not Defendant's job to guide Plaintiff through his disclosure obligations. The Court's Scheduling Order was clear on what was required to present this type of testimony. With the trial date rapidly approaching, the only reasonable remedy is exclusion.

For these reasons, the Undersigned **respectfully recommends** that District Judge Scola **grant** this portion of Defendant's motion and prohibit Dr. Narson, Dr. Warheit, Dr. Popinchalk, Dr. Eber, and Dr. Smith from offering opinions on causation, future medical care, permanency, and the reasonableness of medical charges.

### iii.    Cumulative Nature of Plaintiff's Two Radiology Experts

Defendant argues that only one of Plaintiff's radiology experts should be able to testify because allowing both to testify would create the risk that the jury will resolve differences by "counting heads." [ECF No. 63]. Plaintiff counters that each of the radiology experts reviewed different MRIs of Plaintiff taken at different times.

Because the experts are offering testimony about *different* medical records, their testimony is not cumulative.

For that reason, the Undersigned **respectfully recommends** the District Court **deny** Defendant's request to strike one of Plaintiff's radiology experts.

### IV.    Conclusion

For the reasons discussed above the Undersigned **respectfully recommends** the District Court **grant in part and deny in part** Defendant's motion, prohibit Dr. BiFulco from offering an opinion on causation, and prohibit Dr. Narson, Dr. Warheit, Dr. Popinchalk, Dr. Eber, and Dr. Smith from offering opinions on causation, future medical care, permanency, and the reasonableness of medical charges.

The Undersigned also **respectfully recommends** the District Court **deny** Defendant's request to strike Dr. BiFulco as a witness or to prohibit him from testifying about debilitation or permanency.

Further, the Undersigned **respectfully recommends** the District Court **deny without prejudice** Defendant's request to strike Dr. Narson, Dr. Warheit, Dr. Popinchalk, Dr. Eber, and Dr. Smith and permit the request to be raised after a sufficient Rule 26(a)(2)(C) disclosure is provided.

Lastly, the Undersigned **respectfully recommends** the District Court **deny** Defendant's request to strike one of Plaintiff's radiology experts.

## V.    Objections

The parties will have seven (7) days from the date of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within seven (7) days of the objection. Failure to file objections timely shall bar the parties from a *de novo*

determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).[3]

  **DONE AND ORDERED** in Chambers, in Miami, Florida, on December 20, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to</u>:**
The Honorable Robert N. Scola
All counsel of record

---

[3] The Undersigned is shortening the time period for Objections and Responses because the parties have already submitted multiple memoranda and because the trial date is rapidly approaching.