UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-CV-25302-RNS

KEVIN COLLAZO,

    *Plaintiff*,

v.

PROGRESSIVE SELECT INSURANCE
COMPANY,

    *Defendant*.

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION TO ALTER OR AMEND THE FINAL JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL**

Defendant's Motion for Judgement as a Matter of Law, Motion to Alter or Amend the Final Judgment or, in the Alternative, Motion for New Trial [ECF No. 123] should be denied because Kevin Collazo presented a legally sufficient evidentiary basis for a reasonable jury to find for him, the jury's award is supported by the evidence, Progressive failed to meet its evidentiary burden on applicable set-offs, and binding Florida law holds that the judgment must be entered for the full amount of the UM verdict.

    **I.    FACTS AND PROCEDURAL HISTORY**

    **A. Undisputed Facts.**

On June 27, 2019, Plaintiff, Kevin Collazo, was involved in a car crash with Faris Johnathan Hillaire. *See* Joint Pretrial Stipulation [ECF No. 70 at 5.A.]. Hillaire was the rear driver in a rear-end collision. *Id.* at 5.B. Progressive admitted the uninsured motorist, Hillaire, was negligent in the operation of his vehicle.

At the time of the crash, Hillaire maintained an insurance policy with Security National Insurance Company. *Id.* at 5.J. Hillaire's policy provided bodily injury liability coverage with limits of $10,000.00. *Id.* at 5.K. Hillaire's insurance carrier tendered its $10,000.00 bodily injury policy limits. *Id.* at 5.M.

At the time of the crash, Collazo had purchased an automobile insurance policy with uninsured motorist coverage underwritten by Progressive. Progressive did not deny coverage or raise any policy defenses. *Id.* at 5.H.-I.

### B. The Trial Evidence.

A jury trial commenced on July 18, 2022. At the outset of trial, the jury needed to determine: (1) whether the uninsured motorist's negligence was a legal cause of Collazo's losses, injuries, and damages, (2) whether Collazo sustained a permanent injury as a result of the subject crash, and (3) the total amount of Collazo's damages.

Collazo testified at trial. He explained to the jury how the impact caused neck and back injuries. He described his treatment in detail. He explained how he started with conservative chiropractic care, which was helping for a period of time. However, the pain progressed to a point where the chiropractor referred Collazo to an orthopedic practice.

The physicians ordered magnetic resonance imaging (MRI) studies of his neck and back, which revealed disc pathology. Pain management modalities including medial branch blocks and radiofrequency ablations were attempted. The medial branch blocks provided some relief for a period of weeks. The radiofrequency ablation provided longer lasting relief, but ultimately the pain returned.

At this point, Collazo's orthopedic surgeon, Samuel Popinchalk, M.D., ordered a second set of MRI studies. Those studies revealed progression of his injuries and Dr. Popinchalk

recommended neck and back surgeries. Collazo underwent a disc arthroplasty at the age of 31. Collazo has not undergone the back surgery yet.

Collazo also discussed his current condition and how his injuries continue to affect him. His neck pain has improved following the surgery, but he still has pain. He still suffers from his back injury and avoids certain activities that trigger his pain. He also described everyday activities that he still does that trigger the pain. He even described pain while he sleeps to the point that he needs a special support pillow to sleep.

Collazo introduced his medical records pertaining to his treatment and the resulting medical bills he incurred. During his testimony, Collazo provided a detailed description of the treatment received related to the crash. Collazo also testified about the amount of the medical bills which he testified was necessary for the treatment of his injuries sustained in the crash.

Progressive's attorney objected to Collazo testifying that the medical bills were reasonable and necessary, inviting error. [ECF No. 123-3 48:14-19]. The Court initially sustained the objection [*id.*], but then allowed the parties to argue their positions on the second day of trial. Progressive argued Collazo was not qualified to testify that his medical bills were reasonable and necessary, implying some level of expertise was required. Collazo's attorneys advised the Court that Florida law allows a lay witness to testify the bills were reasonable and necessary, which then creates a question for the jury to determine. Collazo cited to the Florida Supreme Court's decision in *Garrett v. Morris Kirschman & Co.*, 336 So. 2d 566, 571 (Fla. 1976). The Court reviewed the case and allowed Collazo to testify accordingly.

Collazo told the jury that ultimately these are the bills for the treatment he received, and he is ultimately responsible for paying these bills. [ECF No. 123-3 at 102:2-23].

During his case-in-chief, Collazo also called his radiologist, Michael Smith, M.D., orthopedic surgeon, Samuel Popinchalk, M.D., and certified physician life care planner, Santo S. Bifulco, M.D. *See* Minutes for Civil Jury Trial. [ECF No. 105].

Dr. Smith testified about his review of Collazo's MRI images. He showed the jury his findings including the disc herniations found in Collazo's neck and back.

Dr. Popinchalk testified about Collazo's care and treatment. He discussed Collazo's subjective complaints that were supported by objective findings on physical examination and diagnostic studies. He discussed the progression of the injury seen in Collazo's complaints and MRI imaging studies. He described the procedures he performed and the surgeries he recommended.

Dr. Bifulco also testified. Dr. Bifulco examined Collazo, reviewed his medical records and diagnostic imaging studies, consulted with his treating doctors, and devised a future treatment plan. Dr. Bifulco also researched the costs Collazo was reasonably certain to incur with the future care. Dr. Bifulco presented the life care plan for both Collazo's neck and back injuries and the associated costs to the jury. Collazo rested at the end of the second day of trial. *Id.*

Progressive called two witnesses: Marc Kaye, M.D. and Austin Folley, M.D. *See* Minutes for Civil Jury Trial. [ECF No. 107]. Dr. Kaye was Progressive's retained radiologist. Dr. Folley was Progressive's "biomechanic[1]."

Notably, although Progressive cross-examined Collazo and Dr. Popinchalk about the bills, Progressive did not put forth any evidence to establish what a reasonable bill would be. Progressive

---

[1] Dr. Folley is not a professional engineer. On cross examination, he admitted he has never worked as a professional engineer in any field. He holds a bachelor's degree in biosystems engineering and is a part-time emergency room doctor. When cross-examined by Collazo's counsel, Dr. Folley made clear that he was not holding himself out as a biomechanical engineer, but rather a "biomechanic."

neither retained nor called any billing or coding expert. None of Progressive's witnesses testified whether Collazo's bills were reasonable or unreasonable. Nor would they be qualified to do so as neither Dr. Kaye nor Dr. Folley perform chiropractic, pain management, or surgical modalities.

### C. The Jury's Verdict.

After reviewing and weighing the evidence, the jury unanimously awarded Collazo his past medical expenses of $252,000.18, future medical expenses of $150,500.00, past noneconomic damages of $274,150.00, and future noneconomic damages of $167,570.00.

### D. Progressive's Motion.

On August 18, 2022, Progressive filed Defendant's Motion for Judgment as a Matter of Law, Motion to Alter or Amend the Final Judgment or, in the alternative, Motion for New Trial. [ECF No. 123]. Progressive argues the Court should:

1. enter judgment as a matter of law,
2. amend the final judgment to conform with Collazo's $100,000.00 uninsured motorist coverage limits,
3. amend the final judgment because it is entitled to a setoff for the bodily injury settlement with Hillaire's insurance carrier and for personal injury protection (PIP) Collazo reportedly received,
4. grant a new trial based on Collazo's per diem argument, and
5. remit Collazo's award for past medical expenses.

Collazo will address each argument in turn. The Court should deny the motion for the following reasons.

## II.    LEGAL STANDARDS.

### A. Motion for Judgment as a Matter of Law.

Federal Rule of Civil Procedure 50 sets forth the standard for a court to grant a motion for judgment as a matter of law. "The standard for granting the motion is a demanding a one." *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1130 (11th Cir. 2018). In entertaining a motion for judgment as a matter of law, the court reviews all of the evidence in the record. *Reeves*

5

*v. Sanderson Plumbing Products, Inc.*, 500 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate references from the facts are jury functions, not those of a judge." *Id.* (citations omitted). The court must draw all reasonable inferences in favor of the nonmovant and disregard all evidence favorable to the moving party that jury is not required to believe." *Id.* at 150-51 (citations omitted).

Under this standard, "a district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005) (citations omitted). The court should deny the motion "if the plaintiff presents enough evidence to create a substantial conflict in the evidence on an essential element of the plaintiff's case." *Id.* (citations omitted).

### B. Motion for New Trial and/or Motion to Alter or Amend a Judgment.

Rule 59 governs motions for new trial and motions to alter or amend a judgment. In entertaining a motion for new trial, the court "may weigh the evidence, but it is proper to grant the motion only if the verdict is against the great, not just the greater, weight of the evidence." *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988) (citations omitted). In considering a motion to alter or amend judgment, "[t]he courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice." *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994).

### C. Remittitur.

"It is well understood that a 'jury's verdict should not be disturbed if there is competent evidence in the record to support it." *Moses v. K-Mart Corp.*, 905 F. Supp. 1054, 1057 (S.D. Fla.

1995), *aff'd*, 119 F.3d 10 (11th Cir. 1997) (citing *Deakle v. John E. Graham & Sons*, 756 F.2d 821, 827 (11th Cir. 1985)). A new trial should only be ordered if the verdict is so excessive that it shocks the conscience of the court. *Id.* If the verdict does not, remittitur is only appropriate if the award exceeds the amount established by the evidence. *Id.* (quoting *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1448 (11th Cir. 1985)).

### III.  ARGUMENT

#### A.  Progressive is Not Entitled to Judgment as a Matter of Law

Progressive renews its motion for judgment as a matter of law. [ECF No. 123 at p. 5]. Progressive fails to attach the trial transcript or otherwise explain why it believes it is entitled to judgment as a matter of law. That reason alone should be grounds for denying the motion.

To the extent Progressive claims Collazo failed to establish a prima facie case of negligence, this motion must be denied. Prior to trial, Progressive admitted Hillaire was negligent in the operation of his vehicle and caused this rear-end crash. [ECF No. 70 at 5.A]. Therefore, the questions at the outset of trial for the jury to decide were (1) whether the uninsured motorist's negligence was a legal cause of loss, injury, or damage; (2) whether Collazo sustained a permanent injury; and (3) the extent of Collazo's damages.

During trial, Collazo's orthopedic surgeon, Dr. Popinchalk, testified the subject crash caused Collazo's injuries. Progressive's retained expert witnesses, Dr. Folley and Dr. Kaye, both agreed Collazo sustained sprain/strain injuries, but said they were not permanent injuries. Because there was no evidence refuting Collazo was injured as a result of the uninsured motorist's negligence, the Court properly entered judgment as a matter of law as to question 1.

Collazo also presented evidence supporting the jury's finding that he sustained a permanent injury. Collazo described his injuries, ongoing treatment, and current symptoms. Importantly, he

testified about how these injuries continue to affect his life. Dr. Smith showed the jury Collazo's MRI studies which revealed disc herniations in the cervical and lumbar spine. Dr. Popinchalk testified the subject crash caused Collazo's injuries. Dr. Bifulco testified the injuries are permanent and will require ongoing treatment into the future. This was a sufficient evidentiary basis for a reasonable jury to find for Collazo on this material element of his cause of action. *Pickett*, 420 F.3d at 1278. To the extent Progressive is asking the Court to weigh the evidence against its expert's conflicting testimony, the Court should deny the motion. *Reeves*, 500 U.S. at 150.

Similarly, Collazo admitted evidence of his past medical expenses in the form of his testimony and the medical bills introduced into evidence. Collazo also established the future medical expenses he is reasonably certain to incur through the testimony of his life care planner, Dr. Bifulco. Lastly, Collazo's testimony about the pain and suffering he endured and will continue to endure was a sufficient evidentiary basis for a reasonable jury to award non-economic damages. Because Collazo's damages were supported by evidence and the Court should not weigh the evidence, the Court should deny the motion. *Id.*

### B. The Final Judgment Must Be Entered in the Amount of the Verdict.

Progressive's Motion ignores binding Florida law that holds that the jury verdict remains the binding determination of Plaintiff's damages. Florida law is clear that while execution may be limited to the policy limits, the verdict itself stands as the binding quantification of the insured's damages. *See Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214 (Fla. 2016); *21st Century Centennial Ins. Co. v. Walker*, 254 So. 3d 978, 981 (4th DCA 2018). Progressive attempts to lead this Court into error by citing cases that predate *Fridman* and one state court order attempting to rewrite what "the *Fridman* Court must have intended." *Sandoval v. State Farm Mut. Auto Ins. Co.*, 2022 WL 1296958 at *3 (Fla. 4th Judicial Cir., March 24, 2022).

The jury in this action returned a verdict for Mr. Collazo in the amount that quantified his damages as against Progressive. Yet Progressive asks this Court to commit error and reduce the final judgment to the policy limits based on "the sound reasoning in *Sandoval*" and the argument that entry of judgment in excess of the policy limits would be "premature and confusing." Def.'s Mot. for New Trial at 9. Progressive knowingly cites to older cases, misapplies the Florida Supreme Court's decision in *Fridman* (which reversed a prior decision of the Fifth District Court of Appeal), and asks this Court to ignore the Fourth District Court of Appeal's follow-on decision in *21st Century*.

"[T]he Florida Supreme Court decided *Fridman* and established the appropriate protocol to follow if a plaintiff prevails in a UM action and then elects to pursue a bad faith claim." *21st Century*, 254 So. 3d at 981.[2] Citing *Fridman*, the Fourth District Court of Appeal stated, "any judgment entered should be for the full amount of the insured's damages, even though the insured must later proceed with a bad faith action to recover any amount in excess of the policy limits." *21st Century*, 254 So. 3d at 981 (citing *Fridman*, 185 So. 3d at 1230). The <u>execution</u> of the judgment is limited to the policy's limits. *21st Century*, 254 So. 3d at 981. "The [Florida Supreme Court] endorsed the 'preferable approach' of entering final judgment in these cases for the full amount of the verdict while limiting execution of the judgment to the policy amount." *Id*. (citing *Fridman*, 185 So. 3d at 1229); *accord Geico Gen. Ins. Co. v. Paton*, 150 So. 3d 804, 808 n.1 (Fla. 4th DCA 2014). Florida's only appellate court to address the specific issue before this Court concluded that the jury verdict does not get reduced in an uninsured motorist case, the execution is simply limited to the policy's limits. Progressive fails to allege an intervening

---

[2] The *21st Century* opinion is the only Florida appellate decision on this precise issue.

change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice entitling him to an amended judgment.

### C. The Final Judgment Should Be Reduced by the Applicable Set-Offs That Were Stipulated or Have an Evidentiary Basis.

Progressive argues the Court should reduce the verdict by the amount Collazo received from Hillaire and under his personal injury protection coverage. Collazo does not dispute that under section 768.76, Florida Statutes, the Court should reduce the amount of the jury's award by the $10,000.00 settlement obtained from Hillaire's bodily injury liability settlement. The parties stipulated there was a $10,000.00 settlement with Hillaire's bodily injury carrier. Joint Pretrial Stipulation [ECF No. 70 5.M.]. Therefore, the Court should reduce the verdict by $10,000.00.

Collazo does not dispute that under sections 768.76 and 627.727(3), Florida Statutes, the Court should reduce the amount of the jury's award for past medical expenses paid or payable under Collazo's personal injury protection (PIP) coverage. The problem here is evidentiary. Florida law requires evidence of PIP benefits to be presented to the trier of fact, absent agreement by the parties to present such evidence post-trial. *Caruso v. Baumle*, 880 So. 2d 540, 545 (Fla. 2004). Here, there was no such agreement. *See* Joint Pretrial Stipulation [ECF 70]. And there is no record evidence as to the amount Progressive paid under Collazo's PIP coverage. *See* Pl.'s Mot. for Summ. J. [ECF No. 47]. Because Progressive did not present any evidence of the amount paid under Collazo's PIP coverage at trial, Progressive failed to meet its evidentiary burden and the Court should not reduce Collazo's past medical expenses.

### D. Collazo's Per Diem Argument Was Supported by Evidence and Permissible.

During closing argument, Collazo's attorney made a per diem argument for non-economic damages. Although Progressive agrees these arguments are permissible and within the sound discretion of the trial court, Progressive complains abouts its use. Collazo's per diem argument

was supported by evidence, the Court advised the jury that what the lawyers say is not evidence, and the jury ultimately did not award what was requested. As such, a new trial is not warranted.

Whether to allow a per diem damages argument is within the sound discretion of the trial court. *Showan v. Pressdee*, 922 F.3d 1211, 1220 (11th Cir. 2019) (quoting *Baron Tube Co. v. Transp. Ins. Co.*, 365 F.2d 858, 864-65 (5th Cir. 1966) (en banc)). The Baron Tube court explained:

> In essence, the unit of time argument is nothing more than an effort to persuade the jury to evaluate a long period of pain and suffering in terms of its smaller time equivalents. Thus, the idea or worth of one year of pain may not be as understandable, real or persuasive to a juror as its equivalent, three hundred and sixty five days of pain and suffering. Whether the unit be cast in years or months, or weeks or days is a mere matter of degree, and there is little logic in prohibiting the discussion of large units of time in terms of their smaller mathematical equivalents. It is merely a different way of talking about precisely the same thing and it would be unusual, short of a showing that a defendant would be deprived of a fair trial, for the use of the argument to be denied altogether. This is not to say that it is not a powerful form of advocacy, but it is to say that with proper safeguards, as here, it is permissible advocacy.

365 F.2d 858, 865.

Here, Collazo testified about the nature of his injuries, how the injuries have affected his lift, and his condition at the time of trial. Based on the evidence presented to the jury, it was reasonable for the jury to conclude Collazo suffered in the past and will continue to suffer from his injuries in the future. Collazo testified the pain is there, but he learned to live with it. [ECF No. 123-3 at 45:13-10]. Now, Collazo must decide whether to perform an activity that will trigger the pain or avoid the activity. *Id.* The pain affected the way he sleeps to the point he purchased a special pillow. *Id.*

### E. The Jury's Award Has an Evidentiary Basis and Should Not Be Disturbed.

The jury in this case reviewed the undisputed evidence and awarded Collazo his full past medical expenses and future medical expenses Collazo was reasonably certain to incur. Defendant complains the jury award of Collazo's past medical expenses should be remitted to arbitrary

numbers unsupported by evidence. [ECF No. 123 at pp. 15-18]. The jury's award does not exceed the amount established by the evidence and remittitur is inappropriate. *Goldstein*, 758 F.2d 1448.

First, Defendant's position "is at odds with Florida law, which for forty years has recognized the sufficiency of lay testimony to create a jury question on the issue of the reasonableness of medical bills." *Lawton-Davis v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-1157-Orl-37DAB, 2016 WL 7238904 at *2 (M.D. Fla. Apr. 21, 2016) (citing *Garrett v. Morris Krischman & Co.*, 336 So. 2d 566, 571 (Fla. 1976) (finding that "[the plaintiff's] testimony made it a question for the jury to decide, upon proper instructions, whether [his] medical bills represented reasonable and necessary medical expenses").

In *Garrett*, the plaintiff sought to introduce physician and pharmacy bills into evidence. *Id.* The defense objected arguing the plaintiff's testimony alone was insufficient to show the bills were reasonable and necessary expenses. *Id.* The Florida Supreme Court disagreed. It held expert testimony was not required to render the medical bills admissible in evidence. *Id.* Rather, the plaintiff's testimony made it a question for the jury to decide whether the bills were reasonable and necessary medical expenses. *Id.*

"Applying the holding in *Garrett*, courts have found that the introduction of medical bills combined with testimony linking the medical bills to the accident at issue is sufficient to establish the reasonableness of the bills." *Torres v. First Transit, Inc.*, 367 F. Supp. 3d 1373, 1381 (S.D. Fla. 2019), *rev'd on other grounds*, 979 F.3d 876 (11th Cir. 2020) (citing *Walerowicz v. Armand-Hosang*, 248 So. 3d 140, 144-45 (Fla. 4th DCA 2018) (finding that plaintiff's testimony describing the treatment for which the bills were incurred and relating that treatment to the injuries sustained, the surgeon's testimony, and introduction of the medical bills were sufficient to establish reasonableness of bills); *Polaco v. Smith*, 376 So. 2d 409, 409–10 (Fla. 1st DCA 1979) (plaintiff's

testimony "that she had incurred all of the medical bills as a result of the accident . . . alone was sufficient predicate for allowing the jury to resolve the question of whether the medical bills were reasonable or necessary"); *Easton v. Bradford*, 390 So. 2d 1202 (Fla. 2d DCA 1980) ("the trial judge properly placed the question of the necessity and reasonableness of the charges within the purview of the jury" in light of plaintiff's testimony relating the treatment to the accident).

Here, Collazo admitted into evidence his medical records and bills. He provided a detailed description of the treatment he underwent which he related to the pain and injuries caused by the subject crash. He also testified as to the amount of his medical bills and that they were reasonable and necessary for his treatment. This evidentiary foundation made it a question for the jury to decide.

Progressive presented no contrary evidence establishing what other providers may charge for the same or similar services. Progressive neither retained nor called any billing experts at trial. Therefore, Collazo's medical bills and his testimony were the only evidence presented as to the reasonableness of medical bills.

Progressive cites to section 768.74(5), Florida Statutes, as an apparent basis for remittitur. That section sets forth five considerations to analyze whether a jury award is excessive:

> (a)  Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
> (b)  Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
> (c)  Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
> (d)  Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
> (e)  Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.

However, Progressive does not, and cannot, indicate which section warrants remittitur. The award is not indicative of prejudice, passion, or corruption. The jury did not award all of the damages Collazo's counsel requested. The jury did not ignore evidence; it considered the only evidence before it. Also, because there was evidentiary support for the jury's award, it cannot be said that the award was based on speculation or conjecture. The amount awarded has a direct correlation with medical bills introduced in evidence and those of a 33-year-old now suffering from a permanent injury requiring surgery. Progressive's only argument is based on evidentiary foundation, which Collazo satisfied as explained above.

Section 768.75, Florida Statutes, does not "alter[ ] the longstanding principles applicable to the granting of new trials on damages." *Poole v. Veterans Auto Sales and Leasing Co., Inc.*, 668 So. 2d 189, 191 (Fla. 1996). "[T]he trial judge should not sit as a 'seventh juror,' thereby substituting his or her resolution of the factual issues for that of the jury." *Id.*; *see also Brown v. R.J. Reynolds Tobacco Co.*, 113 F. Supp. 3d 1233, 1237 (M.D. Fla. 2015) ("Section 768.74 did not displace Florida's longstanding deference to a jury's damages assessment") (citations omitted).

Because the jury's award of past medical expenses is supported by the evidence presented at trial, the Court should not disturb the jury's award.

Similarly, Dr. Bifulco established a life care plan in conjunction with Collazo's treating physicians. The plan set forth the treatment Collazo is reasonably certain to incur. This was significant considering Collazo was 33 years old at the time of trial and now has evidence of disc pathology and underwent surgery. The jury considered Dr. Bifulco's opinions and awarded a portion of the life care plan, but not its entirety. This shows the jury, in carrying out its duty to evaluate the facts, reviewed the evidence and only awarded what it believed the evidence supported.

Progressive retained a life care planner in this case but did not call her at trial. Therefore, Dr. Bifulco's life care plan was the only evidence presented to the jury on the associated costs of future care.

Because the jury's award of future medical expenses is also supported by the evidence at trial, the Court should not disturb the jury's award.

### F. Defendant Failed to Comply with Local Rule 7.1.

As an additional grounds for denying Progressive's Motion, Progressive did not comply with the Pre-Filing Conference Requirements of Local Rule 7.1 prior to filing. [ECF 123]. The Court may "deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." *See* Local Rule 7.1(a)(3).

### **CONCLUSION**

WHEREFORE, Plaintiff, Kevin Collazo, respectfully requests the Court deny Defendant's Motion for Judgment as a Matter of Law, Motion to Alter or Amend the Final Judgment or, in the Alternative, Motion for New Trial, and grant any further relief this Court deems equitable, just, and proper.

Respectfully submitted,

**MORGAN & MORGAN, P.A.**
703 Waterford Way, Suite 1050
Miami, FL 33126
786-898-5545
786-598-5568 *facsimile*

/s/ Jorge J. Garcia
**Jorge J. Garcia, Esq.**
Florida Bar No. 97922
jorgegarcia@forthepeople.com
jenniferhernandez@forthepeople.com

and

**VER PLOEG & MARINO, P.A.**
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino Jr., Esq.**
Florida Bar No. 79170
smarino@vpm-legal.com
jpacheco@vpm-legal.com
**Alessia A. Rocha, Esq.**
Florida Bar No. 1025878
arocha@vpm-legal.com
*Attorneys for Plaintiff, Kevin Collazo*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on this 1st day of September 2022 on all counsel of record.

*/s/* Stephen A. Marino, Jr.
**Stephen A. Marino, Jr., Esq.**