UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-CV-25302 SCOLA/GOODMAN

KEVIN COLLAZO,

     Plaintiff,

v.

PROGESSIVE SELECT INS.
CO.,

     Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON PLAINTIFF'S
MOTION TO TAX COSTS UNDER 28 U.S.C. § 1920 AND MOTION
TO TAX COSTS UNDER SECTION 57.041, FLORIDA STATUTES**

This case arises from an insurance dispute surrounding a June 27, 2019 motor vehicle collision. Plaintiff Kevin Collazo was involved in a motor vehicle collision with another driver and brought this lawsuit against Defendant Progressive Select Insurance Company, his insurance company, based on alleged nonpayment of a claim for uninsured motorist benefits to reimburse Plaintiff for injuries he allegedly suffered because of the collision.

The case proceeded to trial on May 16, 2022. [ECF No. 97]. The following day, a mistrial was declared due to juror illness. [ECF No. 98]. The case proceeded to a second trial on July 18, 2022. [ECF No. 104]. At the conclusion of the trial, the jury returned a

verdict in favor of Plaintiff and awarded him $844,220.18 in damages. [ECF Nos. 115-16]. The Court then entered a Final Judgment in favor of Plaintiff and awarded him $834,220.18 in damages (the jury's award minus collateral payments Plaintiff received before trial). [ECF No. 139].

Plaintiff filed two separate motions to tax costs: (1) a motion to tax costs under 28 U.S.C. § 1920 [ECF No. 126]; and (2) a motion to tax costs under Section 57.041, Florida Statutes [ECF No. 132]. Both motions are fully briefed with a response [ECF Nos. 128; 143] and a reply [ECF Nos. 130; 144]. United States District Judge Robert N. Scola, Jr. referred the motions to the Undersigned. [ECF Nos. 127; 140].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Plaintiff's motion to tax costs under 28 U.S.C. § 1920 and **deny** Plaintiff's motion to tax costs under Section 57.041, Florida Statutes.

## I.    Summary of Arguments

Between Plaintiff's two motions, he seeks to tax $94,754.48 in costs for myriad expenses incurred prosecuting his claim over the course of the two trials. Plaintiff's arguments in support of taxing each type of cost follow the same general format: the cost is taxable under 28 U.S.C. § 1920 and, if the Court finds that the cost is not, then, alternatively, the cost should be taxed under Section 57.041, Florida Statutes. There are certain costs, however, which Plaintiff seeks to tax under the authority of only Section

57.041, Florida Statutes.

Defendant raises two main challenges in response. First, Defendant contends that Plaintiff was not the prevailing party in the first trial, which means that he cannot recover *any* costs associated with that trial. Second, Defendant says that Section 57.041, Florida Statutes, does not apply because this is a federal case. Defendant also raises individual challenges to the reasonableness or necessity of certain costs.

## II.    Legal Standard

Absent a federal statute, civil procedure rule, or order to the contrary, a prevailing party is entitled to an award of its costs. Fed. R. Civ. P. 54(d)(1). The prevailing party must file a bill of costs, adhering to the guidelines outlined in Local Rule 7.3(c), which specifically references 28 U.S.C. § 1920. Under § 1920, the following costs are taxable against the losing party:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Although a prevailing party is entitled to taxable costs, the Court can still exercise discretion in awarding the costs that § 1920 enumerates. *Crawford Fitting Co. v. J.T.*

3

*Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). When challenging whether costs are taxable, "the losing party bears the burden of demonstrating that a cost is not taxable, unless the knowledge regarding the proposed cost is within the exclusive knowledge of the prevailing party." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) (internal citations omitted). Nevertheless, the Court is still limited to taxing only those costs specifically authorized by statute. *E.E.O.C v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (citing *Crawford Fitting Co.*, 482 U.S. at 445).

### III.  Analysis

Two threshold questions must be resolved before addressing the categories of costs which Plaintiff seeks to tax. First, when a trial results in a mistrial, can a party who prevails during a subsequent trial recover the costs associated with *both* trials? Second, can a plaintiff in a diversity-of-citizenship case rely on Section 57.041, Florida Statutes, to expand the costs recoverable beyond those permitted by 28 U.S.C. § 1920? The answer to the first question is **yes**; the answer to the second question is **no**.

#### a.  Plaintiff is Entitled to Costs Incurred During the First Trial

Defendant contends that Plaintiff should be precluded from taxing costs incurred during the first trial (which resulted in a mistrial). As support for this argument, Defendant relies purely on attorney rhetoric, stating, "where a trial ends in a mistrial, it cannot be said that one party prevails over the other." [ECF No. 128]. However, as Plaintiff notes, there is no language in Rule 54 which limits costs based on the *stage* of the

4

litigation at which a party prevailed. Rather, the plain language provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

Faced with a similar situation, the Court in *Rosenfeld v. Oceania Cruises* held that "the defendant [was] entitled to a cost award related to the first trial because the defendant also prevailed at the second trial." No. 08-22174-CIV, 2014 WL 12683361, at *2 (S.D. Fla. Mar. 18, 2014), report and recommendation adopted sub nom. *Rosenfeld v. Oceania Cruises, Inc.*, No. 08-CV-22174-PCH, 2014 WL 12684930 (S.D. Fla. Apr. 3, 2014). There, the Court rejected the plaintiff's argument that because the matter was reversed on appeal, the defendant was no longer the prevailing party during the first trial. *Id.*

Further, circuit courts throughout the country regularly affirm the award of costs and fees associated with earlier trials provided that the conduct of the prevailing party was not the cause of the need for a second trial. *See Abner v. Kan. City S. Ry. Co.*, 541 F.3d 372, 384 (5th Cir. 2008) (finding no abuse of discretion where district court awarded attorney's fees and costs for first trial that ended in a mistrial due to hung jury); *O'Rourke v. City of Providence*, 235 F.3d 713, 737 (1st Cir. 2001) ("Because the mistake [in admitting evidence] was not caused by [the] plaintiff, there is no reason to deny fees [associated with the first trial]."); *Gierlinger v. Gleason*, 160 F.3d 858, 878–79 (2d Cir. 1998) (finding denial of fees an abuse of discretion where record did not support finding of misconduct by plaintiff's counsel; mistrial was instead based on strong colloquies made by judge in presence of jury); *see also Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 742–

43 (7th Cir. 2003) (denying attorney's fees for work performed during the first trial because "[w]e simply do not think it appropriate to award a litigant attorney's fees for a trial that was voided by her unreasonable strategy," but awarding fees "for the work done in preparation for [the first] trial because it is likely that this work benefitted the second trial as well").

Here, the mistrial was caused due to juror illness; it was not caused by any improper conduct by Plaintiff. Thus, there is no basis to categorically reject Plaintiff's request for costs associated with the first trial merely because that trial resulted in a mistrial.

      b.  <u>Plaintiff May Tax Costs Under Only 28 U.S.C. § 1920</u>

Defendant also avers that Plaintiff should be limited to taxing the costs permitted by § 1920. Plaintiff contends that because this is a diversity action and Section 57.041, Florida Statutes, expands on the costs permitted by § 1920, then this Court must apply the Florida law.

Neither Plaintiff nor Defendant cite any appellate decisions (either from the Eleventh Circuit or its sister circuits) which directly address this issue. Further, the Undersigned's own research reveals that district courts throughout this Circuit have reached conflicting decisions, often with very little discussion of the matter. *Compare Stewart Sleep Ctr., Inc. v. Atl. Mut. Ins. Co.*, 860 F. Supp. 1514, 1521 (M.D. Fla. 1993) (awarding costs under Section 57.041, stating only that the defendant's "arguments in

opposition to [the request] [were] frivolous") *with Pelkey v. State Farm Mut. Auto. Ins. Co.*,

No. 614CV945ORL31GJK, 2015 WL 12860559, at *1 (M.D. Fla. Oct. 27, 2015) ("[The]

[p]laintiff erroneously seeks an award of costs pursuant to Section 57.041, Florida

Statutes. Although this case is before the Court on the basis of diversity jurisdiction,

taxation of costs is controlled by federal law, as opposed to state law." (internal citations

to the docket omitted)). Indeed, much of the parties' memoranda rely on similarly

perfunctory forms of analysis. [ECF Nos. 132; 143-44].

When examining controlling choice-of-law precedent, however, the

inapplicability of Section 57.041, Florida Statutes, in a federal diversity case becomes

clear:

It is a bedrock principle that a federal court sitting in diversity "appl[ies] state

substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct.

1136, 14 L.Ed.2d 8 (1965). The method of resolving which law to apply varies depending

upon whether or not there is a Federal Rule which addresses the matter. *See id.* at 469–

472, 85 S.Ct. 1136. If there is no applicable Federal Rule, then a court must undertake an

"unguided *Erie*[1]" inquiry to determine whether it is appropriate to apply a state statute

or federal common law. *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir.

2018) (citing *Hanna*, 380 U.S. at 465). However, "[w]hen a situation is covered by one of

the Federal Rules . . . the court has been instructed to apply the Federal Rule, and can

---

[1]     *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act[2] nor constitutional restrictions." *Hanna*, 380 U.S. at 471 (footnote added).

In this case, there is a federal rule which applies, so the Undersigned need not engage in an "unguided *Erie*" inquiry. With this in mind, the Undersigned finds the Supreme Court's analysis in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010) instructive on this issue.

*Shady Grove* contained three opinions, with four dissenting justices. Justice Scalia wrote an opinion joined in full by three Justices. Justice Stevens joined part of Justice Scalia's opinion -- making that part a majority opinion -- and wrote a separate concurring opinion. The majority opinion set forth the framework for resolving this type of issue: a Federal Rule governs over state law when (1) it "answer[s] the same question" as the state law, and (2) it is not "ultra vires." *Shady Grove*, 559 U.S. at 399.

---

[2]     28 U.S.C.A. § 2072, which provides that:

> (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.
> (b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.
> (c) Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title.

In *Shady Grove*, the Supreme Court was confronted with the question of whether Shady Grove's suit could proceed as a class action. Shady Grove contended that Federal Rule of Civil Procedure 23 applied. Allstate contended that N.Y. Civ. Prac. Law Ann. § 901(b) (the "New York Law") should control. The provisions of law differed in that the New York Law does not permit a suit to proceed as a class action if it seeks to recover a "penalty."

The Supreme Court's analysis of the first step of the framework was straightforward. It began by noting that Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Id.* at 398. "Because [the New York Law] attempts to answer the same question—*i.e.*, it states that Shady Grove's suit 'may *not* be maintained as a class action' (emphasis added) because of the relief it seeks—it cannot apply in diversity suits unless Rule 23 is ultra vires." *Id.* (emphasis in original).

Allstate contended that because the New York Law also contained class certification criteria comparable to that required by Rule 23, the provision at issue -- precluding class certification in suits seeking to recover a penalty -- concerned a separate subject. The Court rejected this argument and framed the question as a simple one: "whether [the New York Law] concerns a subject separate from the subject of Rule 23." The answer to that question was that "Rule 23 permits all class actions that meet its requirements, and a State cannot limit that permission by structuring one part of its

statute to track Rule 23 and enacting another part that imposes additional requirements." *Id.* at 401. Ultimately, the Court held that the Federal Rule applied, because "[b]oth of [the New York Law's] subsections undeniably answer the same question as Rule 23: whether a class action may proceed for a given suit." *Id.*

On the second issue, writing for only the plurality, Justice Scalia wrote that "Congress has undoubted power to supplant state law, and undoubted power to prescribe rules for the courts it has created, so long as those rules regulate matters rationally capable of classification as procedure." *Id.* at 406. Highlighting that the Supreme Court had "rejected every statutory challenge to a Federal Rule that has come before [them]," Justice Scalia said that the Court had "long held that this limitation means that the Rule must 'really regulat[e] procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.'" *Id.* at 407 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S.Ct. 422, 85 L.Ed. 479 (1941)). Said differently,

> [t]he test is not whether the rule affects a litigant's substantive rights; most procedural rules do. What matters is what the rule itself regulates: If it governs only the manner and the means by which the litigants' rights are enforced, it is valid; if it alters the rules of decision by which the court will adjudicate those rights, it is not.

*Id.* (citation, brackets, and internal quotation marks omitted).

Justice Stevens' concurrence departed from Justice Scalia's opinion on the second element. In Justice Stevens' view, Justice Scalia's focus on whether the rule "really

regulates procedure" ignores the Enabling Act's second limitation that the rules also "not abridge, enlarge or modify any substantive right." *Id.* at 424-25 (citing 28 U.S.C. § 2072(b)). To give meaning to this provision, Justice Stevens writes that courts should look to "whether the state law actually is part of a [s]tate's framework of substantive rights or remedies." *Id.* at 419. Despite the difference in reasoning, Justice Stevens reached the same result, finding that the New York Law was not intertwined with states' rights or remedies and that it is applicable to all claims, regardless of origin. *Id.* at 432-36.

Applying *Shady Grove's* framework to this issue results in only one conclusion: In diversity cases, Section 57.041, Florida Statutes does not permit a district court to award costs beyond those enumerated in 28 U.S.C. § 1920 (through Rule 54(d)).

Under step one, the Undersigned must determine whether Rule 54(d) and Section 57.041 "answer the same question." They clearly do. Both Rule 54(d) and Section 57.041 address what costs the court can award to a prevailing party. The reality that Section 57.041 would permit a litigant to obtain costs beyond those allowed by Rule 54 (d) does not change this result. The Court cannot excise the provisions of the statute to say that the statute addresses the same subject matter as Rule 54(d) when it allows for costs permitted by the rule and addresses a different subject matter when it allows for additional costs beyond what is permitted by Rule 54(d). Regardless of which costs are being considered, they still deal with the same subject matter as Rule 54(d) -- i.e., costs awarded to a prevailing party.

11

The Undersigned need not labor long on the second step to determine whether Rule 54(d) is ultra vires under either Justice Scalia's or Justice Stevens' method.[3] As noted previously, the Supreme Court has rejected every statutory challenge to a Federal Rule that has come before it. Neither party has contended Rule 54(d) is unconstitutional or exceeds the authority under the Rules Enabling Act. Moreover, Congress' proscriptions on a prevailing party's ability to tax costs in federal courts as a matter of procedure has a history dating back to the 1700s. *Crawford Fitting Co.*, 482 U.S. at 439-40 (detailing Congress' dissatisfaction with the disparate results created by permitting the individual state's taxation provision to control in federal court and the history of Congress' efforts to create a uniform federal process).

Courts throughout this Circuit and the country agree that Rule 54(d)'s cost shifting provision "really regulates procedure." *See McDonald v. Hunter Warfield, Inc.*, No. 3:20-CV-971-MMH-LLL, 2022 WL 807438, at *4 (M.D. Fla. Mar. 17, 2022) ("While shifting attorney's fees may be substantive, shifting costs is usually a procedural issue governed by federal law."); *Carter v. Gen. Motors Corp.*, 983 F.2d 40, 43 (5th Cir. 1993)

---

[3] Since the second step of the *Shady Grove* framework rises from a plurality opinion, the narrower ground controls. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment[ ] on the narrowest grounds . . . ." (internal quotations omitted)). Because the Undersigned concludes the Rule 54 is not ultra vires under either Justice Scalia's or Justice Stevens' method, and the Eleventh Circuit has not yet confronted which method is controlling, I decline to address which ground is narrower.

("[c]onclud[ing] that federal procedural law ordinarily governs the award of costs in diversity cases"); *Bosse v. Litton Unit Handling Sys., Div. of Litton Sys., Inc.*, 646 F.2d 689, 695 (1st Cir. 1981) ("We see no reason [not to limit expert fees to those allowed by Federal Rule of Civil Procedure 54(d)] in diversity cases."); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1223 (3d Cir. 1995) ("[U]nder *Hanna v. Plummer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), where there is a valid applicable Federal Rule of Civil Procedure [concerning costs], it is to be applied by a federal court even where the plaintiff's claim is based on state law."); *cf.* § 2669 Governing Law, 10 Fed. Prac. & Proc. Civ. § 2669 (4th ed.) ("Variations between state and federal practice in the assessment of costs after the case has been disposed of do not appear likely to promote forum shopping or to affect "the outcome of the litigation" in any significant way and therefore employing federal law does not violate the underlying policies of the *Erie* principle." (internal footnotes omitted)).

Justice Stevens' method leads to the same result. Section 57.041 is not tied to any substantive Florida rights or remedies. Instead, it is the *general* cost-shifting statute, applicable to all cases in Florida -- whether brought under Florida law, federal law, or the law of any other state. A different result might be appropriate under this method if the statute were connected to a specific substantive area of law, such as employment discrimination or civil rights lawsuits. Section 57.041, however, is not tied to any particular cause of action. Thus, the same reasons which supported Justice Stevens'

determination that the New York class action law did not implicate the scope of state-created rights and remedies also support determining that Section 57.041 is not "part of [Florida's] framework of substantive rights or remedies." *Shady Grove*, 559 U.S. at 419.

Accordingly, under *Shady Grove's* two-step framework, a Florida plaintiff in a diversity lawsuit may not rely on Section 57.041 to tax costs not allowable by federal law.[4]

The cases Plaintiff cites in support of his position -- *Parkes v. Hall*, 906 F.2d 658 (11th Cir. 1990); *Maiden Specialty Ins. Co. v. Three Chefs & a Chicken, Inc.*, No. 12-22724-CIV, 2014 WL 11429052, at *11 (S.D. Fla. Jan. 28, 2014); and *Southern-Owners Ins. Co. v. Marquez*, No. 20-81431-CIV, 2022 WL 2651661 (S.D. Fla. July 8, 2022) -- do not change this conclusion.

In *Parkes*, the Eleventh Circuit held that the costs authorized by the offer of judgment cost-shifting rule (Federal Rule of Civil Procedure 68) are limited to those enumerated in § 1920 "unless the substantive law applicable to a particular cause of action expands the general § 1920 definition." 906 F.2d at 660. In a footnote, the Court

---

[4]    Although the Eleventh Circuit has not addressed the applicability of Section 57.041, Florida Statutes, under *Shady Grove*, it has not been hesitant to find other state laws inapplicable in federal court. *See, e.g., Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1347 (11th Cir. 2018) (Georgia's anti-SLAPP (Strategic Lawsuits Against Public Participation) statute's motion-to-strike procedure does not apply in federal court because it answers the same question as Rule 12(b)(6)); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1333 (11th Cir. 2015) (Alabama's Deceptive Trade Practices Act conflicts with Rule 23's class action provisions and, because the laws answer the same question, Rule 23 controls in federal court).

offers -- as *dicta* -- that "[i]n a diversity case such as this, the applicable state law may provide for attorney's fees or other items to be taxed as costs." *Id.* at 660 n.5.

*Parkes* is unpersuasive because the language Plaintiff relies on is *dicta*, the decision predates *Shady Grove*, and the *dicta* conflicts with other binding Eleventh Circuit precedent. In *Kivi v. Nationwide Mut. Ins. Co.*, 695 F.2d 1285 (11th Cir. 1983), the trial court awarded expert witness fees under Section 627.428(1), Florida Statutes, in excess of the amount authorized by 28 U.S.C. §§ 1920 and 1821. The *Kivi* Court, after noting that various federal courts have taken the unwavering position that expert fees are not taxable, reversed the trial court's award, stating "[o]bviously, the entitlement to expert witness fees under the Florida Statutes is not a substantive right. *Id.* at 1289.

*Maiden Specialty Ins. Co.* is a case from this District in which the court determined the defendants in a diversity case could recover costs under Section 57.041, stating:

> The defendants argue in the reply that they are entitled to costs under Fla. Stat. § 57.041. The defendants cite to *Moore v. Mark Debiase, Inc.*, Case No. 5:10-cv-541-Oc-10PRL (M.D. Fla. January 8, 2013) and *Stewart Sleep Center, Inc. v. Atlantic Mutual Insurance Company*, 860 F. Supp. 1514, 1521 (M.D. Fla. 1993) to argue that costs under the Florida Statute are substantive. In *Stewart Sleep Center, Inc. v. Atlantic Mutual Insurance Company*, 860 F. Supp. 1514 (M.D. Fla. 1993), the Court awarded fees pursuant to Fla. Stat. § 627.428, awarded prejudgment interest, and ruled that an award of costs was proper under Fla. Stat. § 57.041. In this matter, the undersigned found that fees were proper under Fla. Stat. § 627.428. Accordingly, the undersigned finds that an award of costs under Fla. Stat. § 57.041 is proper as well. The costs that are permitted under Fla. Stat. § 57.041 are different from the costs that are permitted under 28 U.S.C. § 1920. Under Fla. Stat. § 57.041, the party recovering judgment is entitled to recover all legal costs and charges. Costs are not limited to those costs listed in 28 U.S.C. § 1920 when the costs are awarded pursuant to Fla. Stat. § 57.041.

2014 WL 11429052, at *11 (S.D. Fla. Jan. 28, 2014), report and recommendation adopted

sub nom. *Maiden Specialty Ins. Co. v. Chefs*, No. 12-22724-CIV, 2014 WL 11429053 (S.D. Fla.

Mar. 13, 2014).

*Maiden Specialty Ins. Co.* is unpersuasive because the court's analysis is conclusory

and the cases cited as support rely on similarly conclusory rationale.

Finally, *Southern-Owners Ins. Co.* discusses the manner in which a court should

determine whether costs beyond those enumerated in § 1920 are permitted. The *Southern-*

*Owners Ins. Co.* Court found that Section 57.041, Florida Statutes applied but declined to

award costs under its provisions because the plaintiff did not qualify as the prevailing

party under state law. Before reaching this conclusion, the *Southern-Owners Ins. Co.* Court

offered the following discussion:

> "[i]n diversity cases, federal law controls the award of costs." *Jin Zhi Star*
> *Lt. LLC v. Am. Zurich Ins. Co.*, No. 08-61191-CIV, 2009 WL 2899913, at *8
> (S.D. Fla. Sept. 2009); *Grasso v. Grasso*, No. 13-cv-3186, 2016 WL 8716273
> (M.D. Fla. Oct. 21, 2016), report and recommendation adopted, No. 13-cv-
> 3186, 2016 WL 7240051 (M.D. Fla. Dec. 15, 2016) ("In diversity cases, a
> district court must apply federal law to determine whether a [party] is
> entitled to costs."). "The only exception by which state law provides the
> rules for determining costs is where the applicable state law expands the
> costs allowed under § 1920." *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No.
> 07-cv-00386, 2010 WL 1417063, at *10 (M.D. Fla. Apr. 7, 2019). "But, in order
> to do so, the substantive law to be applied must 'explicitly' authorize the
> allowance of additional costs." *Id.* (alteration omitted) (citing *Parkes v. Hall*,
> 906 F.2d 658, 660 (11th Cir. 1990)). In this regard, "federal courts may award
> costs other than those enumerated in § 1920 pursuant to contractual or
> statutory authorization." *Piper Aircraft, Inc. v. Czech Sport Aircraft, A.S.*, No.
> 12-14107-CIV, 2020 WL 7774743, at *1 n.1 (S.D. Fla. Dec. 10, 2020), report

and recommendation adopted, No. 12-14107-CIV, 2020 WL 7770896 (S.D. Fla. Dec. 30, 2020).

2022 WL 2651661, *17.

This decision is unpersuasive because, in my view, both it and the other decisions it cites misinterpret the relevant case law and fail to acknowledge the considerations the court must make when determining whether to apply state law or federal law.

To begin, the decision rests on cases which improperly combine the *Parkes* Court's statement that § 1920 applies "unless the *substantive* law applicable to a particular cause of action expands the general 1920 definition" with the *dicta* in a footnote concerning how applicable state law may provide for other items to be taxed as costs. Based on this erred amalgamation, *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No. 07-cv-00386, 2010 WL 1417063, at *10 (M.D. Fla. Apr. 7, 2019) -- the decision which *Southern-Owners Ins. Co.* quoted at length -- reached the incorrect, generalized conclusion the "[t]he only exception by which state law provides the rules for determining costs is where the applicable state law expands the costs allowed under § 1920." This generalized statement ignores the all-important requirement that any expansion must come from a *substantive* law.

Therefore, because Rule 54(d) answers the same question as Section 57.041, Florida Statutes, and falls within the statutory authorization of the Rules Enabling Act, a federal court sitting in diversity has no power to award costs under Section 57.041, Florida Statutes. Accordingly, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's motion to tax costs under Section 57.041, Florida Statutes.

c. <u>Taxable Costs</u>

Plaintiff seeks to tax costs under § 1920 for four different categories of expenses: (1) Fees of the Clerk; (2) Fees for Service; (3) Fees for Printed or Electronically Recorded Transcripts; and (4) Fees for Printing.[5] [ECF No. 126]. In all categories except for fees of the clerk, Defendant challenges either a portion or the whole of Plaintiff's request. [ECF No. 128].

i. *Fees of the Clerk*

Plaintiff seeks to tax $415.04 for the cost of filing his Complaint in state court. Defendant does not object to this cost

State court filing fees are recoverable costs under 28 U.S.C. § 1920(1). *Fam. Oriented Cmty. United Strong, Inc. v. Lockheed Martin Corp.*, No. 8:11-CV-217-T-30AEP, 2012 WL 6575348, at *1 (M.D. Fla. Dec. 17, 2012) ([F]iling fees, including ones paid to the state court prior to removal, are taxable [under § 1920].").

Therefore, the Court **respectfully recommends** that the District Court **grant** Plaintiff's request and award him $415.04 for the state court filing fee.

ii. *Fees for Service*

---

[5]   In Plaintiff's reply memorandum, he "withdr[ew] his request [sic] animation, MRI imaging, and trial technician costs" and said that he would "seek to tax these costs pursuant to Florida Statutes § 57.041." [ECF No. 131]. Thus, the Undersigned will not consider those costs under 28 U.S.C. § 1920.

Plaintiff seeks to tax $1,511.00 in costs associated with serving subpoenas for both the first trial and for the second trial. Defendant objects to the cost of any subpoenas connected to the first trial and to the cost of the individual subpoenas served for the second trial. The Undersigned has already determined that Plaintiff may recover costs connected to the first trial, so I will address only the amount for each of the subpoenas.

Plaintiff's service costs can be broken down as follows: (1) $115.00 for serving the chief financial officer; (2) $515.00 for serving six subpoenas for the first trial; and (3) $881.00 for serving five subpoenas for the second trial. [ECF No. 125-2].

Courts in this District have confirmed that service of process fees paid to private process servers are taxable under 28 U.S.C. § 1920(1), provided that the process server's rates do not exceed the fees of the U.S. Marshals to effectuate service. *Transatlantic Lines, LLC v. Portus, Stevedoring LLC*, No. 14-60528-CIV, 2016 WL 1154796, at *3 (S.D. Fla. Jan. 13, 2016) (citing *W&O, Inc.*, 213 F.3d at 624). The United States Marshals rate to effectuate service is $65.00 per hour for process served, plus travel costs and out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3).

The invoices Plaintiff submitted as part of his motion reveal that many of the subpoenas at issue cost much more than the $65.00 rate allowed to the Marshals. Indeed, many of the subpoenas for the second trial contain surcharges for "RUSH" service. [*Compare* ECF No. 125-2, p. 5 ($60.00 to serve Dr. Popinchalk for the first trial) *with* p. 8

($150.00 for rush service on Dr. Popinchalk for the second trial)]. Defendant should not be forced to bear the expense of Plaintiff's decision to request rush service.

In his reply, Plaintiff requests "leave to supplement the invoices and provide [the timesheet showing the amount of time and the hourly rate] for further consideration by the Court." [ECF No. 131]. "The party seeking an award of costs or expenses bears the burden of submitting a request that enables a court to determine what costs or expenses were incurred by the party and the party's entitlement to an award of those costs or expenses." *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1292 (S.D. Fla. 2015) (citing *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994)). Before submitting his motion, Plaintiff should have researched the issue and made sure that he provided all necessary information. The Court is not required to permit a party to refile, supplement, or otherwise provide additional information after the opposing party has identified a deficiency in the party's initial request.

Because many of Plaintiff's service costs exceed the Marshal's rate, reductions are necessary. *Nelson v. N. Broward Med. Ctr.*, No. 12-61867-CIV, 2014 WL 2195157, at *3 (S.D. Fla. May 27, 2014) ("[I]n the absence of documented travel or out-of-pocket expenses, the maximum recovery per subpoena is $65.00 or the actual cost incurred, whichever is less.").

Reducing the per subpoena cost in each category to a maximum of $65.00 results in the following distribution: (1) $65.00 for serving the chief financial officer; (2) $350.00

for serving six subpoenas for the first trial (four of the subpoenas cost only $60.00); and (3) $325.00 for serving five subpoenas for the second trial.

Accordingly, the Undersigned **respectfully recommends** that the District Court award Plaintiff $740.00 for the costs of service ($771.00 less than the requested amount).

*iii. Fees for Printed or Electronically Recorded Transcripts*

Plaintiff seeks to tax $1,553.45 for the costs incurred obtaining the deposition transcripts of three witnesses. These costs are divided among three depositions: (1) Plaintiff; (2) Defendant's Corporate Representative; and (3) Dr. Warheit. Plaintiff says that the first two depositions were necessary for motion practice and trial preparation and that the third deposition was necessary because Dr. Warheit was unavailable for the July 15, 2022 trial.

Defendant contends that Plaintiff has not established that the transcripts were not merely for the convenience of counsel. It also says that "Plaintiff provide[s] no explanation as to whether these transcripts were expedited or condensed" -- which are costs Defendant believes are non-taxable because they are for the convenience of counsel.

"The taxation of deposition costs is authorized by § 1920(2)." *W&O, Inc.*, 213 F.3d at 620. The factual question of whether specific deposition and transcript costs are taxable depends on whether the deposition was "necessarily obtained for use in the case." *Id.* at 621; *see also Rodriguez v. Marble Care Int'l, Inc.*, 862 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012). If a deposition cost was incurred merely for convenience, to aid in thorough preparation,

21

or for purposes of investigation only, then the cost is not recoverable. *W&O, Inc.*, 213 F.3d at 620 (internal citations omitted); *see also Rodriguez v. M.I. Quality Lawn Maint., Inc.*, No. 10-21031-CIV, 2012 WL 664275, at *4 (S.D. Fla. Feb. 9, 2012). It is the *losing party's burden* to show that "specific deposition costs . . . [are] not necessary for use in the case[.]" *Monelus*, 609 F. Supp. 2d at 1337 (citing *W&O, Inc.*, 213 F.3d at 621) (emphasis added).

Both of Defendant's arguments are unpersuasive. The deposition of a plaintiff seeking to recover for damages incurred during a motor vehicle accident is clearly an important deposition. Likewise, the deposition of an insurance carrier's corporate representative is likely paramount in a case in which the plaintiff has alleged that the insurance carrier has acted in bad faith. Further, transcribing a deposition so that the testimony may be presented to the jury despite the deponent's unavailability for trial is not a cost which is merely for counsel's convenience. Defendant has failed to offer any argument which would counteract these obvious realities.

On the second issue, if Defendant wanted to contest the specific charges, then it could have reviewed the three pages of invoices included with Plaintiff's motion [ECF No. 125-3]. Nonetheless, the Undersigned's review of the invoices reveals that there are charges included in Plaintiff's request which are traditionally non-taxable as costs merely for the convenience of counsel.

"[T]ranscript shipping and handling costs are not recoverable." *Rodriguez v. Marble Care Int'l, Inc.*, 862 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012) (citing *Castillo v. Teledyne Cont'l*

*Motors, Inc.*, No. 08–21850–CV, 2011 WL 1343051, at *2 (S.D. Fla. Mar. 16, 2011)). Likewise, "[c]osts for transcript exhibits and condensed (or 'mini') versions of a transcript are only recoverable where the moving party demonstrates that these items were necessary and not merely ordered for the convenience of counsel." *Id.* (citing *Woods v. DeAngelo Marine Exhaust, Inc.*, No. 08–81579, 2010 WL 4116571, at *8 (S.D. Fla. Sept. 27, 2010)). In his reply, Plaintiff responds to only Defendant's argument about the general necessity of these deposition transcripts. Therefore, the Undersigned finds that Plaintiff has failed to establish the necessity of certain extra costs associated with the transcription services.

Accordingly, the $380.60 requested for Plaintiff's deposition should be reduced by $50.00 ($20.00 for a condensed transcript and $30.00 for processing and compliance); the $549.00 requested for Defendant's Corporate Representative's deposition should be reduced by $25.00 ($25.00 for a litigation package); and the $623.85 requested for Dr. Warheit's deposition should be reduced by $31.85 ($31.85 for a litigation package).

In summary, the Undersigned **respectfully recommends** that the District Court award Plaintiff $1,446.60 for deposition costs ($106.85 less than the requested amount).

### iv.   Fees for Printing

Plaintiff requests $661.00 "for printing hard copies of the exhibits and deposition transcripts." [ECF No. 126]. His argument in support of awarding this cost is a single sentence: "These costs were necessary for trial presentation and impeachment." *Id.* The

invoice Plaintiff attached as support for his request offers little additional information. It contains three pages of entries which all mirror the format of the following example:

> 5/5/2022 Soft Cost $5.50 Morgan & Morgan PA BW-PRINT MAT-5328525Print - Black and White

[ECF No. 125-4].

Defendant contends in response that Plaintiff should not be permitted to tax any of these costs because his explanation as to necessity is "vague" and his backup documentation is "merely a spreadsheet detailing generic costs for printing services." [ECF No. 128]. Plaintiff says that Defendant's requested level of detail is unnecessary and that he is not required "to provide an accounting for each printed document, but only need [sic] to provide evidence showing the nature of the documents copies and how they were used." [ECF No. 131 (citing *Dillon v. Axxsys Int'l, Inc.*, 2006 WL 3841809, *7 (M.D. Fla. Dec. 19, 2006))].

Although Plaintiff has correctly stated what is required from a party seeking to recover copying costs, that does not mean that his evidence is sufficient to meet that burden.

"The burden of establishing entitlement to photocopying expenses lies with the prevailing party." *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1340 (M.D. Fla. 2002). "Where, as here, a party provides insufficient information regarding copy costs, courts frequently decline to award any costs." *Smith v. HM Wallace, Inc.*, No. 08-22372-CIV-GOL, 2009 WL 3179539, at *3 (S.D. Fla. Oct. 1, 2009); *see also Daughtry v.*

*Army Fleet Support, LLC*, No. 1:11CV153-MHT, 2014 WL 466109, at *2 (M.D. Ala. Feb. 5, 2014) ("When a party claiming costs "'fails to respond to the objections to a bill of costs by coming forward with evidence showing the nature of the documents copied and how they were used or intended for use in the case, the court may disallow costs." (quoting *Coleman v. Roadway Express*, 158 F.Supp.2d 1304, 1310 (M.D. Ala. 2001)).

Plaintiff's invoices provide only three pieces of information: (1) the date the copy was made; (2) the price of the copy; and (3) whether the copy was in black & white or whether it was in color. The lack of *relevant* information -- i.e., the nature of the copy, how many pages were copied, whether there were multiple copies made of the same document, whether the copy was actually used or likely to be used at trial -- renders the Undersigned wholly unable to determine (1) if the copy was necessarily made and (2) if the cost of the copy was reasonable. For example, if the entry the Undersigned provided as an example was the cost of printing five black & white copies, then it would be an unreasonable expense at $1.10 a page. If, however, it was the cost of printing 110 black & white copies, then it would be a reasonable expense at $0.05 a page.

Because Plaintiff has failed to provide enough information to determine whether this cost is either necessary or reasonable, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's request to tax this cost.

## IV.    Conclusion

For the reasons discussed above the Undersigned **respectfully recommends** the

District Court **grant in part and deny in part** Plaintiff's motion for taxable costs and award him $2,601.60 in taxable costs ($1,538.85 less than the requested amount). Further, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's request to tax costs under Section 57.041, Florida Statutes.

## V.   Objections

The parties will have fourteen (14) days from the date of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**DONE AND ORDERED** in Chambers, in Miami, Florida, on December 19, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All counsel of record